## SHIPS AND FREIGHT.

MUMFORD <em>v.</em> NICOLL, 20 J. R. 611.

In Chancery, 4 J. Ch. R. 522.

*Joint Owners of Ship ; Lien of, as between each other.*

THE point on which the decree of the Chancellor was reversed was as to the principle adopted by him, that the part owners of a ship stand on the footing (" nice distinction " the reporter calls it,) of *tenants in common*, and not as partners; and that therefore one owner having got into his possession or received the whole proceeds of a voyage, he has *no right* to retain them against his joint owner to reimburse or indemnify himself for what he has paid or advanced more than his share for the outfits, repairs, or expenses of the ship for that particular voyage or adventure ;

But the Court of Errors *reversed* this part of the Chancellor's decree holding that though the part owners are, gene-

rally speaking, *tenants in common*, not partners or joint tenants; yet there may be a *special partnership* between them in the ship, as well as in the cargo, in regard to a particular voyage and adventure, and the proceeds arising from the sale of the ship and cargo and the profits of the adventure; and where one of two part owners of a ship and cargo receives or gets into his possession the whole proceeds, he *has a right to retain* them until he is paid or indemnified for what he has paid or advanced more than his share; but not for any *general* balance of account arising from former and distinct voyages or adventures in which they have been concerned together, in the same or other ships or vessels, there being no general partnership between them, and each adventure creating a special partnership by itself, which terminated with the particular adventure.

Chancellor Kent, in this case, followed the decision of Lord Eldon, in *Ex parte Young*, 2 Ves. & Beames, 242. Lord Eldon held, that a part owner of a vessel had no lien on the share of his co-owner for a balance which may be due him.

---

In 1 Gilpin, 460, *Hopkinson, District Judge*, says, " I should be disposed to follow the opinion of Lord Eldon in the case of *Ex parte Young*, 2 Ves. & Beames, 242, as Chancellor Kent did, on this question in the case of *Mumford* v. *Nicoll;* although a majority of the judges in the Court of Errors, seemed inclined to support the opinion of Lord Hardwicke in the case of *Doddington* v. *Hallett*, 1 Ves. Sen. 497, which was in favor of the lien."

Per Hopkinson, J. in *Patton* v. *The Randolph*, 1 Gilpin, 460.

In *Doddington* v. *Hallett*, Lord Hardwicke held that part owners of a ship, being tenants in common and not joint tenants have a right notwithstanding to consider that as a chattel used in partnership and liable as partnership effects to pay all debts whatever to which any of them are liable on account of the ship."

Though *Ex parte Young* and *Daniel* v. *Russell*, 14 Ves. 393, seem to decide the contrary, and a case in Massachu-

setts Supreme Court, *Merrill* v. *Bartlett*, 6 Pick. 47, might on mere authority balance that of Lord Hardwicke, yet the case of *Mumford* v. *Nicoll*, as decided by our Court of Errors seems to have settled the law on this point, in our own state, as to the lien of a part owner for the balance due him for his advances beyond his own proportion or account of the ship, where the lien is claimed on a *particular voyage* as in that case; and the expression of Hopkinson, J. that a majority of the judges of the Court of Appeals (Errors) seemed *inclined* to support the opinion of Lord Hardwicke, in the case of *Doddington* v. *Hallett*, refers only to that part of Lord Hardwicke's decision which gave a lien for a general balance on the voyages and transactions of the ship-owners, in favor of the creditor owner. But as to the lien on the *particular voyage* in that case, the Court of Errors distinctly overruled and *reversed* the decree of the Chancellor and sustained the lien.

From the opinion of Spencer, Ch. J. upon those two points the following extracts will prove that he was inclined to adopt the rule of Lord Hardwicke in *Doddington* v. *Hallett*, to its fullest extent, as to the lien of a part owner for advances where there was, as in that case, a limited special partnership existing in the fitting out, on a circuitous trading voyage at the joint expense of the parties. He says, "Lord Hardwicke perfectly understood the distinction between a tenancy in common, such as owners of different shares in a ship have among themselves, and a joint tenancy, as between partners, of the goods and stock in trade. He meant *to decide and did decide that a subject which ordinarily may be held as a tenancy in common may by the acts of the parties, become to be held in joint tenancy. And the facts of the agreement to build the ship at their joint expense, in proportion to their shares, and the agreement to fit her out and victual her for the service of the East India Company, formed in his judgment such a community of interest, as to constitute that a partnership transaction, in relation to those subjects, and thus a specific lien was acquired by those who contributed more than their shares, against the shares of the one who contributed less than his proportion.

"The cases cited by the Chancellor, and on which he has

relied to establish a contrary doctrine do undoubtedly strong-
ly impugn the authority of *Doddington* v. *Hallett*, though
I must be allowed to say, that the case, *Ex parte Parry*, 5
Ves. Jr. 575, is very distinguishable and does not oppose Lord
Hardwicke's opinion."

" It is, however, to be observed that all the cases on
which the decree (in the case before the court) is founded
are long since our revolution, and have no authoritative in-
fluence here; and I am not disposed to overrule Lord *Hard-
wicke*, supported, as I think he is, by Lord Mansfield and the
other judges who sat with him, in a case in which justice
and right require him to be supported. The statement of
this case shows, that it is much stronger for the appellant
than the case before Lord Hardwicke. The vessel here was
owned in equal shares and was fitted out, or to be fitted out
on a circuitous trading voyage at the joint expense of the
parties. It was, therefore, a limited and special partnership,
not only as to the cargo, freight, and the profits thereon, but
as to the fitting out of the vessel. The respondents are as-
signees for prior debts and are chargeable with notice, or
at all events, have received the subject, liable to all equities
between the appellant and Stillwell. Can it be just and
equitable to deprive the appellant of his right to re-imburse
himself for the moneys he has been compelled to pay, as
part owner for the default of Stillwell, in whose shoes the
respondents stand ? I answer unhesitatingly, that it would
be inequitable and unjust to do so."

---

. November 13th, 1822. A majority of the senators (24 to 4,)
concurred in the opinion of Ch. J. Spencer, that the decree
ought to be *reversed* in part and thus modified : it was accord-
ingly *decreed,* that the decree of the Court of Chancery be
*reversed ;* and that an account should be taken between the
respondents as assignees of Stillwell, and the appellant, in
respect to the brig Phoenix and her cargo and voyages, &c.,
on the footing of a special partnership in such brig, cargo,
and voyage, and the proceeds thereof: and that on such ac-
counting, the appellant should be allowed all moneys paid by
him more than his proportion for repairs to the Phoenix, in

fitting her out for the voyage, and also for what he had paid more than his proportion of her outfit in ship chandlery or otherwise, excluding from such accounts any former or other voyage in any other vessel or vessels."

Question of costs reserved.